# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| JEFFERY B DANIELS, | § <br> § <br> § |
| Plaintiff, | § CIVIL ACTION NO. 4:15-CV-00702-CAN <br> § |
| v. | § <br> § <br> § |
| TEXAS DEPARTMENT OF <br> TRANSPORTATION, | § <br> § <br> § <br> § |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Texas Department of Transportation's ("TxDOT") and Executive Director Bass's ("Bass") (collectively "Defendants") Motion for Dismissal ("First Motion to Dismiss") [Dkt. 17] and Defendants' Motion for Partial Dismissal under Rule 12(b)(1) ("Second Motion to Dismiss") [Dkt. 50]. After reviewing the First and Second Motions to Dismiss, all responsive pleadings, and all other relevant filings, the Court finds that Defendants' First Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** and Defendants' Second Motion to Dismiss is **DENIED**.[1]

## BACKGROUND

Plaintiff filed this suit on October 13, 2015, alleging TxDOT—itself and by and through its Executive Director James M. Bass ("Bass")—had engaged in racial and disability discrimination and retaliation through its "disciplinary actions, harassment, work assignments, and work crew segregation" [Dkts. 1 at 2; 20-1 at 4]. Plaintiff claims that his status as an African American man and/or as a physically disabled person led TxDOT to terminate him from

---

[1] The Court previously considered and granted portions of Defendants' First Motion to Dismiss, as discussed *infra*.

his position as a "Maintenance Tech" in Sherman, Texas, on July 31, 2014 [Dkt. 20-1 at 4]. Plaintiff also describes "several disciplinary actions that had been issued to [him] over a four-year period" prior to his termination and used as a basis for his termination as "either too old to have any relevance [to the termination], or false or contrived[] . . . [in] an effort to paper [Plaintiff's] file to make [him] look as bad as possible[.]" *Id.* at 6. Plaintiff advances three distinct theories of liability (under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act Section 504 ("Section 504")) premised on his alleged physical disability and status as an African American TxDOT employee.

Defendants filed their First Motion to Dismiss on April 26, 2016, advancing the following arguments: (1) the State's Eleventh Amendment immunity bars Plaintiff's claims against Bass in his official capacity ("Bass Immunity Argument"); (2) the State's Eleventh Amendment immunity bars Plaintiff's Section 504 claims against Defendants ("Section 504 Immunity Argument"); (3) U.S. Supreme Court precedent bars Plaintiff's 42 U.S.C. § 1981 claims ("Section 1981 Argument"); (4) any of Plaintiff's claims under Title VII and/or the ADA relating to incidents that predate July 19, 2014 are time-barred ("Statute of Limitations Argument"); and, lastly, (5) that Plaintiff fails to state any claim upon which relief may be granted ("12(b)(6) Argument"). On May 10, 2016, Plaintiff filed his Response to TxDOT's Motion for Partial Dismissal, or in the Alternative, Motion for Leave to File Second Amended Complaint ("Response") [Dkt. 20]. In his Response, Plaintiff clarified that he "seeks only prospective injunctive relief, attorney's fees and costs against Bass, in his official capacity, under the ADA as provided by the *Ex parte Young* doctrine[,]" and that he asserts no claims for anyone other than himself. Further, Plaintiff dropped any Section 1981 claims. *Id.* at 3, 5-6. Plaintiff

argued, however, that TxDOT has no Eleventh Amendment immunity with regard to Plaintiff's Section 504 claims, either because Congress has abrogated the State's immunity or because the State has consented to suits under Section 504. *Id.* at 3-4. Plaintiff also argued that none of his claims were time-barred and that each of his claims has merit. *Id.* at 4-6. Defendants filed their Reply in Suport [sic] of Motion for Dismissal and Response to Plaintiff's Alternative Motion for Leave to File Second Amended Complaint ("Reply") on May 20, 2016 [Dkt. 21]. On May 23, 2016, Plaintiff filed his Reply in Support of Daniels' [sic] Motion for Leave to File Second Amended Complaint, or in the Alternative, Sur-Reply to TxDOT's Motion for Partial Dismissal ("Surreply") [Dkt. 22], reurging the arguments in his Response.

On October 21, 2016, the Court held a hearing ("Hearing") on several pending motions, including Defendants' First Motion to Dismiss and the responsive pleadings thereto. At Hearing, the Court denied Defendants' First Motion to Dismiss as to the 12(b)(6) Argument, denied as moot Defendants' First Motion to Dismiss as to the Section 1981 Argument, granted Defendants' First Motion to Dismiss as to the Statute of Limitations Argument, and took under advisement all immunity arguments. The Court also granted Plaintiff leave to file his Second Amended Complaint. The Second Amended Complaint [Dkt. 20, Ex. 1] is the live pleading in this case. The Court takes up the Immunity Arguments herein, including specifically the Bass Immunity and Section 504 Immunity Arguments.

Subsequent to Hearing, on November 1, 2016, Defendants filed their Second Motion to Dismiss, asserting (1) Plaintiff impermissibly asserts claims on behalf of third parties[2] and (2) reasserting that TxDOT has Eleventh Amendment immunity to Plaintiff's Section 504 claims [Dkt. 50]. Also on November 1, 2016, Plaintiff filed an Advisory to the Court Regarding

---

[2] Plaintiff expressly disclaimed any third party claims in his Response [Dkt. 6]. Accordingly, the Court finds Plaintiff makes no claims on behalf of third parties here and considers Defendant's contrary assertion no further.

TxDOT's Waiver of Immunity, noting therein that his Surreply addresses TxDOT's Section 504 Immunity Argument [Dkt. 49]. As a result of the foregoing, only Defendants' Bass Immunity Argument[3] and Section 504 Immunity Argument remain for the Court's review under Defendants' pending Motions to Dismiss [Dkts. 17; 50].

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In a Rule 12(b)(1) motion, a party may also request that a district court decline to exercise supplemental jurisdiction over a pendent claim following the dismissal of claims establishing the court's original jurisdiction. *See Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 739 (5th Cir. 1997). Whether a government, its entities, or its representatives in their official capacity have immunity to suit presents a threshold, jurisdictional question that courts appropriately consider on a Rule 12(b)(1) motion. *Truman*, 26 F.3d at 594.

## ANALYSIS

Plaintiff seeks "a permanent injunction [against Bass and under the ADA] . . . to include but not be limited to reinstatement and removing documentation of . . . illegal and false disciplinary actions from his file to include any reference to his termination pursuant to all claims" as well as "reasonable attorneys' fees and costs" [Dkt. 20, Ex. 1 at 12]. Plaintiff claims

---

[3] Defendant "concede[d] that *Ex Parte Young* allows for claims for prospective injunctive relief against [E.D. Bass] in his official capacity" such that Defendant no longer pursued its Bass Immunity Argument at Hearing [Dkt. 21 at 3 n.2]. Nevertheless, the Court briefly considers the propriety of Plaintiff's reliance on the *Ex parte Young* doctrine in seeking equitable relief against Bass *infra*.

the *Ex parte Young* doctrine permits this request [Dkt. 20 at 3].[4] Plaintiff also argues that—contrary to Defendants' assertion—the Eleventh Amendment does not bar his claims against TxDOT under Section 504 of the Rehabilitation Act [Dkts. 20 at 3-4; 22 at 1-2; 49]. The Court first considers the applicability of the *Ex parte Young* doctrine to Plaintiff's claims against Bass, then turns to the Eleventh Amendment immunity question.

### A. Bass Immunity Argument and Ex parte Young *Doctrine*

The U.S. Supreme Court held in *Ex parte Young*, 209 U.S. 123 (1908), that a state official "may be enjoined by a Federal court of equity from" enforcing an unconstitutional act where the official has a connection to the unconstitutional act (such as a duty to enforce that act). 209 U.S. at 155-56, 161. The Fifth Circuit has "stresse[d] the continuing significance of the distinction between suits against the state or an arm of the state and those against state officials even in actions seeking prospective or injunctive relief" under this doctrine, finding that "neither the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar." *E.g.*, *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). A claimant properly seeks only prospective relief under this doctrine. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255-56 (2011) ("[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (citations and internal quotations omitted)). Reinstatement constitutes prospective relief. *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) (noting, as well, that "[c]laims for [attorneys'] fees associated with prospective relief and fees that may be awarded as costs are not barred by the Eleventh Amendment"). Likewise,

---

[4] Defendants do not contest this claim [Dkt. 21 at 3 n.2].

where a "request for expungement [of disciplinary records] is prospective in effect[,]" the claimant properly seeks prospective relief. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 699 (S.D. Tex. 2016) (finding as much in the prison context, but noting that prisoner ultimately dropped claim for expungement) (citing *Elliot v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("The injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment. The goal of reinstatement and the removal of damaging information from the plaintiffs work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements.")); *see also Doe v. Caldwell*, 913 F. Supp. 2d 262, 273 (E.D. La. 2012) ("They do also seek relief that is indeed prospective in nature: . . . that the records documenting that they are sex offenders be expunged.").

Here, Plaintiff seeks injunctive relief against Bass for Defendants' alleged disability discrimination.[5] Inasmuch, Plaintiff specifically requests "an order of reinstatement into the position of General Transportation Tech IV with all benefits returned and with reasonable accommodations, and order instructing TxDOT to cease discriminating and retaliating against [Plaintiff] and its employees with disabilities, reasonable attorney's fees, and costs from Bass in his official capacity pursuant to the ADA [Dkt. 20, Ex. 1 at 12]. Under *Ex parte Young* and its progeny, Bass (in his official capacity) has no Eleventh Amendment immunity against claims for such relief.[6] Accordingly, the Court finds that the *Ex parte Young* doctrine applies to Plaintiff's requests for injunctive relief against Bass. To the extent Plaintiff seeks such injunctive relief against TxDOT itself [*see* Dkt. 20, Ex. 1 at 12], the *Ex parte Young* doctrine does not apply. *See*

---

[5] Plaintiff initially sought injunctive relief against Bass for Defendant's purported failure to accommodate Plaintiff's alleged disability as well as for Defendant's purported disability retaliation. Plaintiff has since dropped his ADA failure to accommodate and retaliation claims [Dkt. 31 at 27-28].

[6] The Court expresses no opinion here as to the merit of Plaintiff's underlying ADA claims against either Bass or TxDOT.

*Sessions*, 648 F.2d at 1069. Instead, Plaintiff must demonstrate either that the state has waived its immunity or that Congress has abrogated the state's immunity (such that TxDOT may be sued and pursued for such relief).[7]

### B. Section 504 Argument and Waiver of Eleventh Amendment Immunity

Plaintiff argues that Section 504 "provides a clear statement of Congressional intent to abrogate sovereign immunity" where "a State receives federal financial assistance through the Spending Clause" [Dkt. 20 at 4]. Plaintiff points to two Fifth Circuit cases analyzing "the explicit waiver provision of 42 U.S.C. 2000d-7(a)(1)" and asserts these opinions "unambiguously held that states have waived their sovereign immunity to suit under [Section 504] . . . as *clearly stated* by Congress under its Spending Clause powers" [Dkt. 22 at 2 (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc); *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.2d 342, 345 (5th Cir. 2005))]. Defendants concede that statutes modify the State's Eleventh Amendment immunity under Section 504, but contend that Plaintiff "must still prove facts to show that immunity has been waived, either by abrogation under §5 of the Fourteenth Amendment or by [the state's] consent" [Dkt. 17 at 2-3]. Defendants argue further that "waiver is not simply assumed"—citing the Fifth Circuit's extensive analysis in *Pace* as proof that courts may not take waiver of Eleventh Amendment immunity for granted—and assert "Plaintiff fails to allege facts showing that [Eleventh] Amendment Immunity as to the Rehabilitation Act has been waived" [Dkt. 21 at 3]. Defendants maintain that, although "the Fifth Circuit, en banc, held that a state, or state agency, consents to be sued under the

---

[7] The Court notes that Plaintiff seeks such relief against TxDOT under Section 504 and Title VII, not under the ADA [Dkt. 20, Ex. 1 at 12]. Plaintiff argues only that the state (and, thus, TxDOT) has waived its immunity to suit under Section 504 [Dkts. 20 at 3-4; 22 at 1-2; 49]. Neither party addresses the Eleventh Amendment's applicability to Plaintiff's Title VII claims. Because this matter is jurisdictional, the Court considers and finds *sua sponte* that Congress has abrogated the state's Eleventh Amendment immunity to Title VII claims in the employment context. *See Sessions*, 648 F.2d at 1069 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)).

Rehabilitation Act when it accepts federal funds[,]" "a different result, in favor of sovereign immunity, should apply in this situation where the state agency receives substantial [federal] funding" [Dkt. 50 at 4]. In other words, Defendants argue "this case is factually distinguishable from all of the cases [finding] waiver . . . has occurred" because TxDOT has accepted substantial federal funding. *Id.* at 3-4.[8]

The Eleventh Amendment immunizes states and their government agencies from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; *see also Bd. of Trs. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States."). But "[t]here are two fundamental exceptions to the general rule that bars an action in federal court filed by an individual against a state": Congress may abrogate states' immunity under Section 5 of the Fourteenth Amendment or states may consent to suit notwithstanding their immunity. *Pace*, 403 F.3d at 276-77. For waiver by abrogation to inhere, Congress must have "unequivocally expressed its intent to abrogate [a state's] immunity" and must have "acted pursuant to a valid grant of constitutional authority" in so doing. *Tennesee v. Lane*, 541 U.S. 509, 517 (2004). On the other hand, if a state "*knowingly* and *voluntarily*" waives its immunity through, for example, acceptance of conditional federal funds, it has consented to suit. *Pace*, 403 F.3d at 277-279.

---

[8] Plaintiff alleges and Defendants do not contest that TxDOT receives federal funding [*e.g.*, Dkts. 20 at 4; 50 at 3-4]. *See also* Texas Dep't of Transp., *Annual Financial Report for the Fiscal Year Ended August 31, 2015* at 3 (2015), http://www.txdot.gov/government/reports/finance.html ("Approximately 54 percent of TxDOT's revenue comes from federal funds.").

The Fifth Circuit evaluates waiver by consent (through acceptance of conditional federal funding) under the five-prong spending power test of *South Dakota v. Dole*, 483 U.S. 203 (1987), and has outlined that test as follows:

> (1) Federal expenditures must benefit the general welfare; (2) The conditions imposed on the recipients must be unambiguous; (3) The conditions must be reasonably related to the purpose of the expenditure; and (4) No condition may violate any independent constitutional prohibition. In addition, the Dole Court recognized a fifth requirement that the condition not be coercive: "[I]n some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'"

*Id.* at 278-79. That Court found that *Dole*'s requirements of unambiguous and non-coercive conditions on funding "serve a dual role" in the waiver context "because they ensure . . . that waiver of Eleventh Amendment immunity must be (a) knowing and (b) voluntary." *Id.* at 279. In this context, "the only 'knowledge' that the Court is concerned about is a state's knowledge that a Spending Clause condition requires waiver of immunity, not a state's [or its agency's] knowledge that it has immunity that it could assert." *Id.* at 279. Further, "if Congress satisfies the clear-statement rule, the knowledge prong of the Spending Clause waiver analysis is fulfilled" and, "[i]f the clear-statement rule is satisfied, a state's actual acceptance of clearly conditioned funds is generally voluntary" unless "the spending program itself is deemed 'coercive[.]'" *Id.* Importantly, the Fifth Circuit found, where a State (or its agency) accepts conditional federal funds, "Congress need not declare whether it is proceeding under abrogation or waiver, or both" in conditioning such acceptance on waiver of Eleventh Amendment immunity. *Id.* at 277, 282.[9]

---

[9] The upshot is that "Congress can . . . validly use its spending power to legislate conditions on the disbursement of federal funds *even though* those conditions would be unconstitutional if enacted as direct prohibitions"—i.e., under Section 5 of the Fourteenth Amendment—so long as Congress complies with *Dole*'s mandates. *Id. But cf. Simmang v. Tex. Bd. of Law Examiners*, 364 F. Supp. 2d 874, 881-83 (W.D. Tex. 2004) (holding, pre-*Pace*, that 42 U.S.C. § 2000d-7 did not validly abrogate states' immunity from Section 504 claims because Congress exceeded its Section 5 authority in enacting 42 U.S.C. § 2000d-7 (citing the panel decisions in *Pace* and *Miller* that were later vacated by the en banc decisions cited here)).

Plaintiff asserts 42 U.S.C. § 2000d-7 operates as a congressional waiver of TxDOT's Eleventh Amendment immunity, either through congressional abrogation or because the State accepted federal highway funding [Dkts. 20 at 4 n.3; 22 at 2]. 42 U.S.C. § 2000d-7(a)(1) reads:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of *section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794]*, title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C.A. § 2000d-7 (2012) (emphasis added). The Fifth Circuit has expressly held that waiver of immunity from Section 504 suits through 42 U.S.C. 2000d-7—as a State's consent to suit under Section 504—is valid. *Pace*, 403 F.3d at 280-81 (noting that "[e]ight circuits have reached this conclusion in § 504 cases"); *see also Miller*, 421 F.3d at 351 ("[T]he Spending Clause statutes we addressed in *Pace* . . . were clear and unambiguous regarding waiver: Section 2000d-7 expressly and unambiguously states that parties waive their Eleventh Amendment immunity to actions under § 504 by accepting federal funds."). The Court must find the same, namely that the State—and thus TxDOT—validly waived its Eleventh Amendment immunity in accepting federal funds.

Defendants' argument that the Court should depart from this precedent because of the substantial funding the State has accepted for TxDOT's expenditures is unavailing, as well. The Court construes this argument as a challenge under the fifth *Dole* prong—as an argument that the spending condition here in issue is coercive, given that TxDOT derives a substantial amount of funding from congressional spending programs. The Fifth Circuit in *Pace* addressed this concern directly, finding that "[a] state can prevent suits against a particular agency under § 504 by declining federal funds for that agency." *Pace*, 403 F.3d at 287. Texas or TxDOT could have

rejected federal funding specifically for TxDOT in order to avoid waiving TxDOT's immunity to Section 504 suits. *See id.* ("[T]he state would not have to refuse all federal assistance" to avoid waiver.). "Moreover, no circuit has accepted a coercion challenge to . . . the Rehabilitation Act . . . ." *Id.* Defendants present no facts that would place the present case outside the strictures of *Pace*'s (or *Miller*'s) holding. *See id.*; *see also Miller*, 421 F.3d at 351. Accordingly, the Court must find that the State validly waived its Eleventh Amendment immunity from Section 504 claims vis-à-vis 42 U.S.C. § 2000d-7 and its acceptance of federal funding for TxDOT programs.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants' First Motion to Dismiss [Dkt. 17] should be **GRANTED IN PART AND DENIED IN PART**. Defendants' First Motion to Dismiss should be **DENIED** as to the 12(b)(6) Argument and as to the Immunity Arguments, **DENIED AS MOOT** as to the Section 1981 Argument, and **GRANTED** as to the Statute of Limitations Argument. The Court further finds that Defendants' Second Motion to Dismiss [Dkt. 50] should be **DENIED**. Accordingly,

It is therefore **ORDERED** that Defendants' Motion for Dismissal [Dkt. 17] is hereby **GRANTED IN PART AND DENIED IN PART** and that Defendants' Motion for Partial Dismissal under Rule 12(b)(1) [Dkt. 50] is hereby **DENIED**.

    **IT IS SO ORDERED**.
    **SIGNED this 2nd day of December, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE