IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JEFFERY B DANIELS, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TEXAS DEPARTMENT OF § <br> TRANSPORTATION, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:15-CV-00702-CAN |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Jeffery Daniels' ("Plaintiff") Motion to Partially Reconsider Ruling Reltaed [sic] to TxDOT's Motion for Summary Judgment ("Plaintiff's Motion for Reconsideration") [Dkt. 74] and Defendant Texas Department of Transportation's Motion for Partial Reconsideration Regarding Memorandum Opinion and Order, D.E. 62 ("Defendant's Motion for Reconsideration") (collectively the "Motions for Reconsideration") [Dkt. 75]. After reviewing the Motions for Reconsideration, the responses thereto [Dkts. 81-83; 93-94], and all other relevant filings, the Court finds that each of Plaintiff's Motion for Reconsideration [Dkt. 74] and Defendant's Motion for Reconsideration [Dkt. 75] should be **DENIED**.

### BACKGROUND

The facts of this case are set out in further detail in the Court's Memorandum Opinion and Order [Dkt. 62] resolving, *inter alia*, TxDOT's Motion for Summary Judgment [Dkt. 30]; accordingly, the Court sets forth herein only those facts pertinent to the Motions for Reconsideration.

Plaintiff filed this suit on October 13, 2015, alleging TxDOT—itself and by and through its Executive Director James M. Bass ("Bass")—had engaged in racial and disability discrimination and retaliation through its "disciplinary actions, harassment, work assignments, and work crew segregation" [Dkt. 20-1 at 3]. Defendant subsequently filed a Motion to Dismiss [Dkt. 17] and a Motion for Summary Judgment [Dkt. 30] seeking dismissal of each of Plaintiff's claims. On December 2, 2016, the Court granted, in part, Defendant's Motion to Dismiss, finding that Plaintiff's claims related to incidents occurring before July 19, 2014 were time-barred [Dkt. 59]. The Court further, on December 10, 2016, granted in part and denied in part Defendant's Motion for Summary Judgment [Dkt. 62]. The Motion for Summary Judgment was granted as to Plaintiff's disability discrimination claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"),[1] and denied as to Plaintiff's Title VII race discrimination and retaliation claims. *Id.*

On December 12, 2016, Plaintiff filed his Motion for Reconsideration [Dkt. 74], seeking reconsideration of numerous factual findings related to Plaintiff's Title VII race discrimination claims (and seemingly also as to Plaintiff's ADA and Section 504 claims).[2] Defendant filed its Motion for Reconsideration on December 19, 2016 [Dkt. 75], seeking reconsideration of the Court's finding that Steve Hughes ("Hughes") is a valid comparator in Plaintiff's Title VII claims. Defendant filed its Response to Plaintiff's Motion for Reconsideration on December 27, 2016 [Dkt. 81]. On December 28, 2016, Plaintiff filed his Reply in Support of Plaintiff's Motion for Reconsideration [Dkt. 83], as well as his Response to Defendant's Motion

---

[1] Defendant Bass was accordingly dismissed as a party-defendant [Dkt. 62].
[2] Plaintiff's Motion for Reconsideration focuses almost wholly upon his claims of race discrimination and of retaliation, only briefly mentioning his disability discrimination claims. Nevertheless, the Court has reconsidered its findings as to Plaintiff's disability claims and finds that Plaintiff's claims for disability discrimination are properly dismissed, no manifest errors, intervening change in the law, or new evidence exists such that reconsideration is warranted.

for Reconsideration [Dkt. 82]. Defendant subsequently filed a Supplement to Defendant's Motion for Reconsideration on January 2, 2017 [Dkt. 93], to which Plaintiff responded on January 3, 2017 [Dkt. 94].

## LEGAL STANDARD

A motion seeking "reconsideration" may be construed under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *see also Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). Such a motion "'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In Re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

"If a motion for reconsideration is filed within 28 days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Milazzo*, 2012 WL 1867099, at *1; *see Shepherd*, 372 F.3d at 328 n.1; *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, No. H-08-2931, 2011 WL 798204, at *2 (S.D. Tex. Mar. 1, 2011). Plaintiff and Defendant each filed their respective Motions for Reconsideration within 28 days of the Court's Memorandum Opinion and Order granting in part and denying in part Defendant's Motion for Summary Judgment; the Court will accordingly construe both Motions as Rule 59(e) motions.

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under Rule 59(e) is also appropriate when there has been an

intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479). Because neither Party proffers new evidence nor points to any intervening change in the law, the Court proceeds to evaluate whether either of the Motions for Reconsideration identifies a manifest error in the Court's findings of law and/or fact.

## ANALYSIS

Plaintiff argues in his Motion for Reconsideration that the Court erred in the Memorandum Opinion and Order as follows: (1) improperly reducing his broader claim of race (and disability) discrimination in disciplinary actions and application of TxDOT's disciplinary policies more generally (the "terms and conditions of employment") to a claim only of termination on the basis of discrimination; (2) misconstruing his argument that "TxDOT has not produced any evidence that any non-black, non-disabled, or non-protected activity engaging employees had been subjected to the same mistreatment [as Plaintiff]"; and (3) applying too strictly the *McDonnel Douglas* burden-shifting framework to his claim of discrimination in requiring that he demonstrate his proffered comparators have comparable disciplinary histories [Dkt. 74]. In response, Defendant reiterates that Plaintiff's claims prior to July 19, 2014 are time-barred and that, therefore, no purported adverse actions prior to this period may serve as a basis for any independent claim [Dkt. 81]. Defendant also argues that Plaintiff has failed to allege a pattern-or-practice discrimination claim because Plaintiff admits he does not assert claims on behalf of other employees and because such a claim never was argued (and, thus, was not exhausted) before a reviewing agency. *Id.* Plaintiff asserts in response that he does not make a pattern-or-practice claim here, but rather only alleges discrimination in the terms and conditions of his employment (through discriminatory application of TxDOT's disciplinary

policies) [Dkt. 83]. Plaintiff contends that, in any case, he may rely on evidence of such improper disciplinary actions in making his discrimination claim even where claims based on those actions would be time-barred and that he need not identify claims expressly before a reviewing agency where the claims "grow out of" the facts alleged in his charge of discrimination. *Id.* Defendant argues in its Motion for Reconsideration only that the Court should reconsider its similarly situated comparator analysis as to Hughes [Dkt. 75].[3] The Court turns first to Plaintiff's assertion that the Court improperly reduced his broader discrimination claims, essentially excluding his claim of discriminatory discipline and/or terms of employment in its December 10, 2016 Memorandum Opinion and Order.

## I. *Discrimination in Discipline and/or Terms of Employment*

Plaintiff contends his "claims include not only that he was terminated, but that he was subjected to different terms and conditions of employment[] . . . includ[ing] harassment, the false allegations of misconduct, the failure to investigate in good faith complaints of discrimination, and the amassing of multiple false allegations in an effort to terminate [Plaintiff] in violation of [TxDOT's] progressive disciplinary policy" [Dkt. 74 at 2-3]. Plaintiff points to "[r]acially offensive name calling of himself and other African Americans" on the job, "[f]alse allegations of misconduct and disparate treatment against himself and other African Americans . . . and another disabled employee . . . ," and "[f]ailure to conduct, delays in conducting, and/or contrived investigation protocols into complaints of race discrimination" from 2011, 2013, and 2014 in support of this contention. *Id.* at 3. He asserts that "[t]he Court did not reference or

---

[3] Defendant filed its Supplement to Motion for Partial Reconsideration Regarding Memorandum Opinion and Order, D.E. 62, arguing that "[t]he Court's Order . . . incorrectly states that Grissom made remarks to Greg Tyson" and that the Court cited to an inapposite portion of the record in support of this factual finding [Dkt. 93]. In response, Plaintiff noted that the Court's citation was but one page off, i.e., the Court cited to Dkt. 31-12 at 5, rather than to Dkt. 31-12 at 6-7 [Dkt. 94]. The Court finds the citation error does not amount to a manifest error of fact or law but nonetheless strikes the erroneous citation and parenthetical [*see* Dkt. 62 at 33 ("31-12 at 5 (remarks to Greg Tyson)")].

ORDER – Page 5

conduct any analysis of these portions of [his] claims either in its analysis of [his] prima facie [race and/or disability discrimination] case or showing of pretext." *Id.* Defendant argues in response that any claims (and evidence) related to this allegedly disparate discipline occurring before July 23, 2014 are time-barred or, if they constitute a pattern-or-practice claim, are not properly before the Court [Dkt. 81].[4]  For clarity, the Court begins by reiterating that the claims (but not evidence) of discriminatory and/or retaliatory discipline occurring before July 19, 2014, are time-barred.

On October 21, 2016, the Court granted Defendant's Motion to Dismiss [Dkt. 17] insofar as Defendant argued "any incident occurring prior to July 19, 2014, is time barred[,]" dismissing any claims related to such incidents [*see also* Dkt. 59 at 11].  The Court made clear in its December 10, 2016 Memorandum Opinion and Order that, as a result, Plaintiff cannot assert claims of discrimination *based on* incidents occurring before July 19, 2014, but also that this "[would] not prevent either Party from relying on [such incidents] *as evidence*" in support of timely race or disability discrimination claims [Dkt. 62 at 4 n.3 (emphasis added)].  The U.S. Supreme Court's discussion in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), of the "continuing violation" doctrine provides another lens through which to view this somewhat abstract distinction.

In *Morgan*, the Supreme Court distinguished between hostile work environment claims on the one hand and discrimination and/or retaliation claims on the other.  536 U.S. at 110-21. The *Morgan* Court found that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.  The Supreme Court noted that a discriminatory and/or retaliatory action "'occur[s]'

---

[4] Plaintiff makes clear in his Reply that he asserts no pattern-or-practice claim but merely intends to assert claims of discrimination arising out of incidents that occurred over a period of time [Dkt. 83].  Accordingly, the Court considers this argument no further.

on the day that it 'happen[s]'" while the creation or perpetuation of a hostile work environment "occurs over a series of days or perhaps [even] years . . . ." *Id.* at 110, 115. With respect to "prior discrete discriminatory [or retaliatory] acts [that] are untimely filed[,]" then, the *Morgan* Court found the continuing violation doctrine inapplicable: claims raised on the basis of such actions simply are "no longer actionable" when untimely filed. *Id.* at 114-15. In so finding, the Supreme Court expressly rejected a theory of "serial violations" that amount to one single discrimination or retaliation claim. *Id.* at 114.

But the *Morgan* Court also found that, even where a time-barred adverse employment action cannot itself form the basis of a discrimination or retaliation claim, the same action may serve as evidence of an employer's discriminatory or retaliatory motive. *Id.* at 114-15. This "background evidence" may be used to demonstrate the discriminatory animus that forms the backbone of a successful pretext argument, or to demonstrate a prima facie discrimination or retaliation claim. *See United Air Lines v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences"); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (finding a court may "consider time-barred acts . . . insofar as they are relevant to the Defendant's motivation").

As applied in the present case, these holdings have two impacts: (1) Plaintiff cannot assert independent claims of race or disability discrimination based upon any adverse employment actions that occurred before July 19, 2014, and (2) Plaintiff may rely upon evidence of adverse employment actions prior to July 19, 2014, to the extent such evidence demonstrates

Defendant's alleged discriminatory animus.[5] In other words, though Plaintiff may point to evidence that Defendant "subjected [him] to different terms and conditions of employment[] . . . includ[ing] harassment, . . . false allegations of misconduct, the failure to investigate in good faith complaints of discrimination, and the amassing of multiple false allegations" in support of his discrimination and/or retaliation claims [Dkt. 74 at 2-3], he may not claim "he was subjected to disparate, false, contrived, or misrepresented allegations over a period of years up to and including the [July 23, 2014 Incident,]" *id.* at 3. Indeed, Plaintiff's claim that Defendant subjected him to discrimination through "different terms and conditions of his employment" throughout his employ (and prior to July 19, 2014) bears remarkable similarity to the plaintiff's claims that the *Morgan* Court ultimately rejected at the summary judgment stage in that case:

> On February 27, 1995, Abner J. Morgan, Jr., a black male, filed a charge of discrimination and retaliation against Amtrak with the EEOC and cross-filed with the California Department of Fair Employment and Housing. Morgan alleged that during the time period that he worked for Amtrak he was "consistently harassed and disciplined more harshly than other employees on account of his race.". . . The EEOC issued a "Notice of Right to Sue" on July 3, 1996, and Morgan filed this lawsuit on October 2, 1996. While some of the allegedly discriminatory acts about which Morgan complained occurred within 300 days of the time that he filed his charge with the EEOC, many took place prior to that time period. Amtrak filed a motion, arguing, among other things, that it was entitled to summary judgment on all incidents that occurred more than 300 days before the filing of Morgan's EEOC charge. The District Court granted summary judgment in part to Amtrak, holding that the company could not be liable for conduct occurring before May 3, 1994, because that conduct fell outside of the 300–day filing period.

*Morgan*, 536 U.S. at 105-06. As noted *supra*, the Supreme Court agreed with the district court's conclusion and rejected the Ninth Circuit's theory that such allegations of consistent, purportedly disparate harassment and discipline could countenance a discrimination or retaliation claim that would otherwise fall outside of the statutorily prescribed filing period. *Id.* at 110-21. Here, only

---

[5] The Court expresses no opinion as to the ultimate admissibility of such evidence at trial. The Court reserves such determination for its ruling on the Parties' respective Motions in Limine addressing the same.

the July 23, 2014 Incident, Hostetler's Investigation, and Plaintiff's termination on July 31, 2014, fall within the period for timely filed claims; as a result, Plaintiff may attempt to assert independent discrimination and retaliation claims only as to these particular employment actions.

To reiterate, separate and apart from Plaintiff's termination, only certain of Plaintiff's "claims" fall within the timely filing period, namely that (1) Defendant discriminated against Plaintiff vis-à-vis Hostetler's Investigation by "amassing . . . multiple false allegations" against him, and (2) Defendant discriminated against Plaintiff through Grissom's decision to report Plaintiff's allegedly insubordinate behavior during the July 23, 2014 Incident. Under Title VII, however, a plaintiff must prove that the employer subjected him or her to an "adverse employment action." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). The Fifth Circuit has held that "adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *See id.* at 503. In the retaliation context, the U.S. Supreme Court has focused on "materially adverse actions[,]" which encompass a broader range of employment decisions and, as such, are "not limited to discriminatory actions that affect the terms and conditions of employment," but those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-68 (2006). So far as Plaintiff's discrimination claims go, neither an employer's collection and use of documented disciplinary actions against an employee (even for use in the decision to terminate) nor a supervisor's decision to report alleged misbehavior constitute an adverse employment action because their effect, if any, on an ultimate employment decision is tangential. *See, e.g.*, *King v. Louisiana*, 294 F. App'x 77, 84-85 (5th Cir. 2008) (per curiam) ("Our discrimination jurisprudence has held that poor performance evaluations, unjust criticism, and being placed on

probation do not constitute 'ultimate employment decisions.'") (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)); *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 360 (5th Cir. 2005) (per curiam) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), for the proposition that "the alleged submission of unfair and biased employee evaluations is not an adverse employment action"); *Wynn v. Miss. Dep't of Hum. Servs.*, No. 3:09–cv–717–DPJ–FKB, 2011 WL 3423142, at *3 (S.D. Miss. Aug. 4, 2011) (collecting cases holding that written admonishments and poor performance evaluations do not constitute adverse employment actions as a matter of law); *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 536 (S.D. Tex. 1999) (finding, in discussing purportedly "undeserved" negative performance evaluations, actions that "may increase an employee's chance that she will eventually suffer an adverse employment action" do not themselves constitute "ultimate employment decisions"). Accordingly, only Plaintiff's termination may serve as an adverse employment action upon which Plaintiff may rely in satisfying his prima facie case burden and stating a claim of discrimination here. *See Turner v. Jackson State Univ.*, 630 F. App'x 229, 231 (5th Cir. 2015) (considering termination an adverse employment action sufficient to establish the second element of a Title VII retaliation claim). Plaintiff's only viable discrimination and/or retaliation claim must relate, therefore, to his termination.[6] This accords with the Court's findings and holdings in its December 10, 2016 Memorandum Opinion and Order, which, as a result, suffers from no "manifest errors of law or fact." *See Templet*, 367 F.3d at 479. Plaintiff's Motion for Reconsideration should therefore be denied, and Plaintiff's claims of race

---

[6] The Court notes that Plaintiff, prior to filing his Motion for Reconsideration, alleged only that termination was the operative retaliatory act [*see* Dkt. 62 at 34 n.18 (citing Dkt. 31 at 23)]. To the extent his Motion for Reconsideration attempts to expand upon his previous claims, such attempt is improper. *See Templet*, 367 F.3d at 479 (noting a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment"). Accordingly, the Court does not consider whether Hostetler's Investigation or the July 23, 2014 Incident (or Grissom's decision to report it) constitute retaliatory acts here.

discrimination and of retaliation should proceed to trial as indicated in the December 10, 2016 Memorandum Opinion and Order.

## II.   Plaintiff's **McDonnell Douglas** *Burdens and the Comparator Analysis*

In his Motion for Reconsideration, Plaintiff further asserts both that the Court misconstrues his argument that "[Defendant] has not produced any evidence that any non-black, non-disabled, or non-protected activity engaging employees had been subjected to the same mistreatment as [Plaintiff]" and that the Court applied too strictly the *McDonnell Douglas* burden-shifting framework to his claim of discrimination in requiring that the proffered comparators have comparable disciplinary records to Plaintiff [Dkt. 74]. Defendant does not engage the first argument but contends the Court employed the proper analysis as to the proffered comparators [Dkt. 81].[7] As each of these arguments relate to Plaintiff's burdens at the summary judgment stage under *McDonnell Douglas*, the Court considers them together herein.

In arguing that the Court should deny Defendant's Motion for Summary Judgment, Plaintiff asserted, "absent any evidence that any comparator employees were also subjected to false allegations to support disciplinary actions against them, the similarly situated (nearly identical) analysis has . . . been satisfied, since it can be shown that no comparator suffered a similar adverse action under similar circumstances" [Dkt. 30 at 10-11] (hereinafter "Plaintiff's Absence of Evidence Argument"). The Court found in its December 10, 2016 Memorandum Opinion and Order that "[t]his argument flips the *McDonnell Douglas* burden on its head" [Dkt. 62 at 20 n.11]. Plaintiff argues in his Motion for Reconsideration that this finding misconstrues his argument and that (1) the argument "is not a required feature of meeting his prima facie burden[,]" (2) the argument instead "relates to [Defendant's] burden of production of coming

---

[7] Defendant takes issue with the Court's finding that Hughes is a viable comparator [Dkt. 81]. The Court considers this argument *infra*.

forward with a legitimate non-discriminatory reason" at step two of the *McDonnell Douglas* burden-shifting framework, and (3) the Court's finding would, if taken to its logical conclusion, permit employers to thwart any employee's prima facie race discrimination case by documenting a series of falsified or exaggerated disciplinary reports so as to distinguish the employee's disciplinary record from otherwise similarly situated employees [Dkt. 74 at 5]. Relatedly, Plaintiff contends the Court employed an "inflexible" variation of the *McDonnell Douglas* burden-shifting framework, citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), apparently in support of his argument that the Court improperly found Faulks, Ward, Langford, and Shearin were not valid comparators [Dkt. 74 at 4 n.3, 6-8]. Defendant asserts the *Teamsters* precedent does not apply in "a private, non-class [action] suit" for discrimination, like the one presented here [Dkt. 81 at 2] and that, in any case, the Court's comparator analysis is largely correct. The Court considers these arguments in turn.

### A. *Disciplinary History Within the Burden-Shifting Framework*

At stage one of the *McDonnell Douglas* burden-shifting framework, the plaintiff-employee bears the burden of establishing a prima facie case of race discrimination, which includes demonstrating "he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). To make this showing, the plaintiff must proffer evidence of "comparators"—other employees outside the protected class—who were "similarly situated" to the plaintiff at the time of the adverse employment action. *Id.* Without rehashing its entire analysis here, the Court notes that the disciplinary history of a proffered comparator is part-and-parcel of the "similarly situated" analysis: a plaintiff must show that he or she and the proffered

comparator have "essentially comparable violation histories" to prove the two are similarly situated. *See id.*

Plaintiff's Absence of Evidence Argument runs to the contrary of this established requirement. To begin, such argument rests on the premise that Plaintiff's disciplinary record is, to some extent, falsified or contrived. Specifically, Plaintiff argues

> There is no evidence that comparator employees (white, non-disabled, or non-protected activity) were also subjected to false allegations to support their termination (or other disciplinary actions). Therefore, absent evidence that any comparator employees were also subjected to false allegations to support disciplinary actions against them, the similarly situated (nearly identical) analysis has therefore been satisfied, since it can be shown that no comparator suffered a similar adverse action under similar circumstances.

[Dkt. 31 at 10-11]. With regard to disciplinary actions meted out prior to July 19, 2014, however, such claims are not themselves actionable because they are time-barred: though Plaintiff may offer evidence of such alleged falsification to the extent it demonstrates Defendant's discriminatory animus in the decision to terminate his employment, he cannot establish his disciplinary history is distinguishable on that basis. *See, e.g.*, *Morgan*, 536 U.S. at 110-21; *Evans*, 431 U.S. at 558; *Lopez*, 684 F. Supp. 2d at 852

Moreover, assuming *arguendo* Defendant falsified disciplinary actions against Plaintiff and then relied upon those actions in terminating Plaintiff, requiring Defendant to prove that no falsification did in fact occur or that it subjected Plaintiff's proffered comparators to similar false allegations would improperly shift the burden onto Defendant to disprove Plaintiff's prima facie case. In other words, if the Court were to rely on Defendant's failure to show that the proffered comparators had falsified disciplinary histories in finding that Plaintiff had met his burden of demonstrating his prima facie case, the Court would impermissibly transform Plaintiff's burden of proving a prima facie case into Defendant's burden to *negate* the prima facie case. *Cf. Tex.*

comparator have "essentially comparable violation histories" to prove the two are similarly situated. *See id.*

Plaintiff's Absence of Evidence Argument runs to the contrary of this established requirement. To begin, such argument rests on the premise that Plaintiff's disciplinary record is, to some extent, falsified or contrived. Specifically, Plaintiff argues

> There is no evidence that comparator employees (white, non-disabled, or non-protected activity) were also subjected to false allegations to support their termination (or other disciplinary actions). Therefore, absent evidence that any comparator employees were also subjected to false allegations to support disciplinary actions against them, the similarly situated (nearly identical) analysis has therefore been satisfied, since it can be shown that no comparator suffered a similar adverse action under similar circumstances.

[Dkt. 31 at 10-11]. With regard to disciplinary actions meted out prior to July 19, 2014, however, such claims are not themselves actionable because they are time-barred: though Plaintiff may offer evidence of such alleged falsification to the extent it demonstrates Defendant's discriminatory animus in the decision to terminate his employment, he cannot establish his disciplinary history is distinguishable on that basis. *See, e.g.*, *Morgan*, 536 U.S. at 110-21; *Evans*, 431 U.S. at 558; *Lopez*, 684 F. Supp. 2d at 852

Moreover, assuming *arguendo* Defendant falsified disciplinary actions against Plaintiff and then relied upon those actions in terminating Plaintiff, requiring Defendant to prove that no falsification did in fact occur or that it subjected Plaintiff's proffered comparators to similar false allegations would improperly shift the burden onto Defendant to disprove Plaintiff's prima facie case. In other words, if the Court were to rely on Defendant's failure to show that the proffered comparators had falsified disciplinary histories in finding that Plaintiff had met his burden of demonstrating his prima facie case, the Court would impermissibly transform Plaintiff's burden of proving a prima facie case into Defendant's burden to *negate* the prima facie case. *Cf. Tex.*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (explaining that establishing "the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee" and that, only once the plaintiff does so will the "burden . . . shift[] to the defendant . . . to rebut the presumption"). The Court refused to do so in its December 10, 2016 Memorandum Opinion and Order and committed no legal error in so doing.

Further, Plaintiff's argument that this ruling would permit employers to thwart potential discrimination claims by fabricating disciplinary histories for employees in advance does not sway the Court. The essentially comparable violation history requirement plays a critical role in certain discrimination cases, as the *Teamsters* precedent helps to demonstrate. *See Teamsters*, 431 U.S. at 358 & n.44. The U.S. Supreme Court noted in *Teamsters* (a pattern-or-practice class action case) that the *McDonnell Douglas* framework "demand[s] that the alleged discriminatee demonstrate at least that his rejection did not result from . . . legitimate reasons [for the adverse employment action] . . . ." *Teamsters*, 431 U.S. at 358 n.44. The Supreme Court further found that it is in "elimination of [the legitimate, nondiscriminatory] reasons for [the adverse employment action]" that a plaintiff "create[s] an inference that the [action] was a discriminatory one." *Id.*; *see also Burdine*, 450 U.S. at 253-54 ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."). As applied in the termination context, *Teamsters* supports the requirement that a plaintiff demonstrate he and his proffered comparators have essentially comparable violation histories: by showing similar violation histories, the employee removes an otherwise legitimate reason from the employer's arsenal for its decision to fire. *See id.* Plaintiff, however, cites *Teamsters* for the proposition that *McDonnell Douglas* "did not purport to create an inflexible formulation" for Title VII cases [Dkt. 74 at 4 n.3]. But this finding, read in context,

relates to the Supreme Court's finding that, in pattern-or-practice cases, the plaintiff need not "offer evidence that each person for whom it will ultimately seek relief was a victim of the [alleged discrimination]." *See id.* at 358-61. The finding does not, as Plaintiff suggests, diminish the typical burden-shifting requirements in a discrimination case. In any case, in resolving Defendant's Motion for Summary Judgment, the Court must—and did—follow applicable Fifth Circuit precedent, which clearly requires that the Court evaluate the disciplinary history of the proffered comparators. *See, e.g.*, *Lee*, 574 F.3d at 259; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 895-98 (5th Cir. 2012); *Glaskox v. Harris Cty.*, 537 F. App'x 525, 530 (5th Cir. 2013). Accordingly, the Court committed no manifest error of fact or law in requiring Plaintiff to demonstrate that he and his proffered comparators had essentially comparable violation histories.

### B.     *The Proffered Comparators*

In light of the foregoing, both Plaintiff's and Defendant's argument that the Court erred in its similarly situated analysis must fail. As noted *supra*, neither Party proffers new evidence in support of their respective Motions for Reconsideration. Additionally, neither Party asserts the Court made a manifest legal or factual error in finding Hughes is similarly situated while Langford, Shearin, Ward, and Faulks are not [*see* Dkts. 74-75]. Indeed, both Parties merely point to evidence that was before the Court when it conducted its comparator analysis in the December 10, 2016 Memorandum Opinion and Order—for Plaintiff, the evidence proffered to show Defendant fabricated his disciplinary history [*see* Dkts. 31; 31-2 through 31-13], and for Defendant, Hostetler's (second) Affidavit distinguishing between formal and informal disciplinary actions [*see* Dkts. 30; 30-1; 52-1]—and request that the Court reconsider the same. But as noted, a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal

theories, or arguments" raised or that could have been raised prior to judgment. *See Templet*, 367 F.3d at 479. Accordingly, the Motions for Reconsideration should be denied.

## CONCLUSION

Based on the foregoing, the Court finds that each of Plaintiff's Motion for Reconsideration [Dkt. 74] and Defendant's Motion for Reconsideration [Dkt. 75] should be denied. Accordingly,

It is therefore **ORDERED** that Plaintiff's Motion for Reconsideration [Dkt. 74] and Defendant's Motion for Reconsideration [Dkt. 75] are hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 6th day of January, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE